UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| William Fleming,<br><br>    Plaintiff,<br><br>  v.<br><br>Las Vegas Metropolitan Police Department et al.<br><br>    Defendants. | Case No. 2:23-cv-00177-RFB-EJY<br><br>**ORDER** |

## I.  INTRODUCTION

Before the Court is a single Motion to Dismiss, filed by Defendants Las Vegas Metropolitan Police Department ("Metro"), Officer Javon Charles, Officer Timothy Nye, Officer Gabriel Lea, Officer Cody Gray, Officer Supreet Kaur, Officer Haley Anderson, Sergeant John Johnson, Captain Dori Koren, Officer Richard Palacios, Officer Patrick Whearty, and Officer Wood. For the reasons stated, Defendant's Motions to Dismiss is granted in part and denied in part.

## II.  PROCEDURAL BACKGROUND

Plaintiff William Fleming ("Plaintiff") commenced this case by filing a complaint ("Original Complaint") in the Eight Judicial District Court in Clark County, Nevada on January 2, 2023. ECF No. 1 (Exhibit A). On January 24, 2023, Plaintiff filed the First Amended Complaint ("FAC"). ECF No. 1 (Exhibit B). On February 2, 2023, Defendants filed a petition for removal to federal court based on federal question jurisdiction. ECF No. 1. The case was initially assigned to Judge Cristina Silva, but on February 3, 2023, Judge Silva recused herself from the matter and it

was transferred to this Court. On February 9, 2023, Defendants filed a Motion to Partial Dismiss. ECF No. 11. The motion was fully briefed on March 30, 2023. On March 28, 2023, Magistrate Judge Youchah granted the parties' Joint Discovery Plan and Scheduling Order. ECF No. 26. On August 2, 2023, Judge Youchah granted the parties' second request to extend the discovery deadlines. Discovery is now set to be completed on February 15, 2024. ECF No. 33. On August 21, 2023, the Court heard oral argument on the instant Motion to Dismiss. This Order follows.

### III.   FACTUAL ALLEGATIONS

Plaintiff Fleming is a musician and street performer who resides in Clark County, Nevada. Plaintiff has performed numerous times on the raised pedestrian walkways above the Las Vegas Resort Corridor (the Las Vegas Strip), playing guitar and singing.

Plaintiff alleges that he sets up his guitar, amplifier, and microphone immediately alongside the walls of the pedestrian bridges, to avoid blocking or impeding the flow of pedestrian traffic on the pedestrian bridges. Plaintiff further alleges that he performs with his back to the wall of the pedestrian bridge, as far out of the way of the flow of pedestrian traffic as possible, and condenses his belongings to be as compact as possible to avoid blocking the flow of pedestrian traffic. Plaintiff states he accepts tips and donations, but never charges a fee. ECF No. 1 (Exhibit B) ¶¶ 25-29.

Plaintiff alleges a long history of litigation which has "repeatedly and specifically found that the sidewalks located within the Las Vegas Resort District are public fora." Id. ¶ 31. These decisions date back to 1998. See S.O.C., Inc. v. Cnty. of Clark, 152 F.3d 1136 (9th Cir. 1998); ECF No. 1 (Exhibit B) ¶¶ 31-36. Plaintiff also alleges that "Metro and its officers have been parties to a number of lawsuits regarding infringement of free speech rights in the Las Vegas Resort District," including the 2009 case, Banasik et al. v. Clark County et al., U.S. Dist. Ct. Case No. 2:09-cv-01242-LDG-GWF arising out of Metro officers' citation of street performers for storing materials or obstructing sidewalks in Las Vegas; Santopietro v. Howell, 857 F.3d 980 (9th Cir. 2017) where a performer was cited for allegedly conducting a business without a license; and the 2019 case, Taylor v. LVMPD, et al., U.S. Dist. Case No. 2:19-cv-00995-JCM-NJK, involving the

harassment and citation of a street performer in a wheelchair for obstructing the use of the public walkway. ECF No. 1 (Exhibit B) ¶¶ 37-40.

Plaintiff alleges that during the course of the Banasik litigation, the parties—which included Metro and individual Metro officers as defendants—entered into a Memorandum of Understanding ("MOU"). Through the MOU, the parties agreed that street performing is expressive speech or conduct protected by the First Amendment and that street performing was not a violation of the provisions of Chapter 16.11 of the Clark County Code of Ordinances. As part of the MOU, Plaintiff alleges that the Clark County Code § 16.11.070 was amended to protect the rights of street performers by providing an exception for the temporary placement of musical instruments or a backpack next to the street performer so long as the materials are not actually obstructing the sidewalk. ECF No. 1 (Exhibit B) ¶¶ 41-42. CCC § 16.11.070 provides:

> No equipment, materials, parcels, containers, packages, bundles or other property may be stored, placed or abandoned in or on the public sidewalk. This provision shall not apply to materials or property held or stored in a carry bag or pack which is actually carried by a pedestrian or items such as a musical instrument case or a backpack which is temporarily placed next to a street performer for that street performer's use unless said musical instrument actually obstructs the sidewalk in violation of this chapter.

"Street performer" is defined as a member of the general public who engages in any performing act or the playing of any musical instrument, singing or vocalizing, with or without musical accompaniment, and whose performance is not an official part of a sponsored event." CCC § 16.11.020(i). ECF No. 1 (Exhibit B) at ¶ 43.

Plaintiff alleges that starting in January 2021, Metro officers began harassing, citing, and arresting him for obstructive use of a public sidewalk.

**A.  January 2, 2021 Incident**

Plaintiff alleges he was performing on the bridge connecting the Cosmopolitan and Aria hotels. As part of his performance, he had his guitar strapped to himself, microphone stand in front of him, and guitar case, speaker, and cords on either side of him. He was approached by Metro Officers Nye and Charles who told him he was taking up too much "real estate" with his belongings and needed to leave. Plaintiff offered to make his setup as compact as possible, but Officers Nye

and Charles still demanded he leave or they would issue him a citation. As a result, Plaintiff packed up his belongings and left. Plaintiff researched CCC § 16.11.070 after the incident and saw that it allows for a street performer to perform with items such as an instrument case or backpack next to them. Id. ¶¶ 55-58.

**B.  January 7/8, 2021 Incident**

Plaintiff alleges he was performing on the bridge connecting the Planet Hollywood and Cosmopolitan hotels. Plaintiff was positioned against the glass at the edge of the bridge, with his microphone stand and guitar case at his feet, and his speaker placed inside his guitar case. Just past midnight on January 8, Officers Lea, Gray, and Charles approached Plaintiff and issued him a citation for storing materials on a public sidewalk in violation of CCC § 16.11.070. Plaintiff tried to explain that he was storing his materials on the bridge in compliance with the ordinance and read the ordinance aloud to them at one point. The officers behaved in a hostile manner towards Plaintiff. As a result, Plaintiff left the area. The citation (Case No. 21-CR-005341) was dismissed on or about February 22, 2021. Id.  ¶¶ 59-63.

**C.  January 15, 2021 Incident**

Plaintiff alleges he was performing on the bridge connecting the Cromwell and Bally's hotels. Plaintiff was positioned against the edge of the bridge, with the same compact setup he had on his January 7-8 interaction with the Metro officers. Officers Gray and Charles approached Plaintiff's performance and told him he was violating CCC § 16.11.070. Plaintiff attempted to explain to the Officers that his setup was in compliance with a minimum of ten people per foot of width per minute able to get by. Plaintiff stopped performing and left the area due to the threat of arrest/citation. Id. ¶¶ 65-69.

**D.  January 17, 2021 Arrest**

Plaintiff was performing on the bridge between the Bally's and Flamingo hotels. Plaintiff alleges he positioned himself against the edge of the bridge, with the same compact setup he normally employed. Officer Lea approached Plaintiff with approximately five to eight Doe Officers. Plaintiff attempted to record the interaction with his phone, but Officer Lea grabbed Plaintiff's hand to prevent him from doing so. Plaintiff was forcibly detained and handcuffed by

Officer Lea and Doe Officers. Plaintiff was detained in Clark County Detention Center for over seven hours. The application of handcuffs caused Plaintiff discomfort and bruising. During Plaintiff's arrest, Metro seized the materials he used in his performance, including but not limited to, his guitar, guitar case, microphone, microphone stand, speaker, cables to connect his guitar and microphone to the speaker, and bag to keep materials in, for eighteen days.

Following Plaintiff's arrest, Plaintiff approached Officer Nye in person while he patrolled the Strip and asked how he could perform again in the future without being cited or arrested by Metro. Officer Nye instructed him to have his speaker and microphone attached to him, and although the guitar case could be on the ground, it had to be empty. Id. ¶¶ 70-79.

### E.  February 4, 2021 Incident

Plaintiff was performing on the bridge connecting the Cromwell and Caesar's Palace hotels. Plaintiff was positioned against the edge of the bridge, but this time, in accordance with Officer Nye's directions, his guitar, microphone and speaker were all attached to him, leaving only his guitar case on the ground. Officers Palacios, Whearty, and Doe Officer IX approached and asked for Plaintiff's identification card. The officers acted in a hostile manner towards Plaintiff while checking his records. The officers told Plaintiff that he was not allowed to remain stationary and threatened to arrest him and/or issue him a citation unless he moved. As a result, Plaintiff packed up his belongings and left. Id. ¶¶ 80-84.

### F.  April 30, 2021 Incident

Plaintiff was performing on the bridge connecting the Bellagio and Bally's hotels. Plaintiff was positioned at the edge of the bridge, this time with everything attached to him and none of his belongings on the ground. Officer Wood and Doe Officer X approached Plaintiff. Officer Wood acted aggressively toward Plaintiff and demanded Plaintiff get off the bridge or be arrested. Officer Wood explained to Plaintiff that he could not be there because he did not have a permit to perform. Plaintiff tried to explain he did not need one, but the Officers persisted, stating he leave or be arrested. As a result, Plaintiff left the area. Id. ¶¶ 85-89.

### G.  June 13, 2021 Incident

Plaintiff was performing on the bridge connecting the Cromwell and Bally's hotels.

Plaintiff alleges he was positioned against the edge of the bridge with everything attached to him, except a water bottle and small grocery bag at his feet. Officers Kaur, Anderson, and Sergeant Johnson approached Plaintiff and aggressively threatened to arrest him if he did not leave. Plaintiff left the area. Id. ¶¶ 90-93.

**H.  June 19, 2021 Incident**

Plaintiff was positioned against the edge of a pedestrian bridge with everything attached to him and none of his belongings on the ground. Officer Anderson and Captain Koren approached Plaintiff and demanded he leave or be arrested. Plaintiff left the Strip. Plaintiff felt humiliated and degraded as a result of the Officers' actions.

The Officers' actions have inhibited Plaintiff from engaging in street performance, have discouraged him from continuing to perform in the future out of fear of arrest, citation, and harassment from the Officers. Upon information and belief, Defendant Metro has a policy and practice of allowing its officers to violate the law with impunity and has created or failed to address a culture at Metro that its officers are above the law. Id. ¶¶ 94-98.

Upon information and belief, Defendant Metro has failed to adequately train its officers to refrain from engaging in police misconduct, abusing their position of power, and improperly citing individuals engaged in constitutionally protected street performances. Upon information and belief, all named Officers, were at all relevant times herein employed by Metro. Id. ¶ 9.

Plaintiff alleges that Metro's ongoing practices reflect that it has not honored its agreements in the 2010 MOU and that its violations of Plaintiff's rights are bad faith acts intended to violate the United States and Nevada Constitution. Id. ¶ 54.

IV.    **LEGAL STANDARD**

**A.  Motion to Dismiss**

An initial pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and

are construed in the light most favorable to the non-moving party." Faulkner v. ADT Sec. Services, Inc., 706 F.3d 1017, 1019 (9th Cir. 2013) (citations omitted).

To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must do more than assert "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . . ." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In other words, a claim will not be dismissed if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning that the court can reasonably infer "that the defendant is liable for the misconduct alleged." Id. at 678 (internal quotation and citation omitted). The Ninth Circuit, in elaborating on the pleading standard described in Twombly and Iqbal, has held that for a complaint to survive dismissal, the plaintiff must allege non-conclusory facts that, together with reasonable inferences from those facts, are "plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).

### A.  Rule 15(a) Leave to Amend

Federal Rule of Civil Procedure 15(a) provides that, except in circumstances not present here, "a party may amend its pleading only with the opposing party's written consent or the court's leave," which "[t]he court should freely give . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). The Ninth Circuit has directed that this policy be applied with "extreme liberality." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003). In ruling upon a motion for leave to amend, a court must consider five factors: "bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." United States v. Corinthian Colleges, 655 F.3d 984, 995 (9th Cir. 2011). "Absent prejudice, or a strong showing of any of the remaining [ ] factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist., 654 F.3d 975, 985 (9th Cir. 2011) (citation omitted).

### V.     DISCUSSION

Plaintiff's FAC contains thirteen causes of action, including United States Constitution First Amendment claims against all defendants and Nevada constitutional free speech claims

against all defendants. Plaintiff brings a Fourth Amendment unreasonable search and seizure claim and a false arrest claim against Metro, Lea, and Doe Officers. Plaintiff brings a Nevada false arrest claim against these same defendants. The FAC raises a § 1983 malicious prosecution and Nevada malicious prosecution claim against Defendant Metro, Defendant Lea, Defendant Gray, and Defendant Charles. Plaintiff also brings a Nevada unreasonable search and seizure claim against all defendants. Finally, Plaintiff brings a negligent training, supervision, and retention claim against Metro.

Defendants move to partially dismiss the FAC. Defendants' motion makes five main arguments.[1] First, Defendants argue that Metro is entitled to discretionary immunity with respect to Plaintiff's negligent training, supervision, and retention claim. Defendants contend Metro exercises judgment when training, supervising, and retaining its officers and that judgment is informed by policy, including economic, social, and political considerations. Defendants also argue there is no law or policy that dictates the manner Metro must train and supervise its officers in relation to the First Amendment. Second, Defendants assert that Plaintiff's four state law claims, which were added in Plaintiff's FAC must be dismissed because they are barred under Nevada's claim-notice statute, NRS 41.036(2). Defendants argue that the first notice they had of Plaintiff's state law claims was on January 26, 2023. Because NRS 41.036(2) requires an individual to bring a claim against a government entity within two-years of the incident, Defendant argues that Plaintiff cannot base the state law claims on any acts or incidents that occurred prior to January 26, 2023.

Third, Defendants argue that Metro and the individual officer defendants are also entitled to discretionary immunity with respect to Plaintiff's false arrest and Nevada constitution unreasonable seizure claim. Defendants assert that courts consistently hold that the decision to arrest is clearly a discretionary function and Plaintiff does not allege any facts that suggest bad faith on the part of the defendants. Fourth, Defendants contend that Plaintiff's § 1983 and Nevada unlawful seizure of property claims are barred by the one-year Nevada statute of limitations, NRS

---

[1] Defendants also argued that Metro and the individual officer defendants were entitled to qualified immunity but they informed the Court at the August 21, 2023 motion hearing that they have since withdrawn that defense for the purposes of the Motion to Dismiss. Accordingly, the Court does not consider it here.

11.190(5)(a). Finally, Defendants argue that Plaintiff's § 1983 and Nevada malicious prosecution claims fail as a matter of law because Plaintiff does not demonstrate that Metro defendants pressured or procured the criminal proceedings against him.

Plaintiff counters that Metro is not entitled to discretionary immunity because policies that involve the curtailment of constitutional rights were not intended to be protected; negligence unrelated to any plausible policy objectives is not subject to discretionary immunity; and Metro owed a duty to Plaintiff to use reasonable care in training, supervision, and retention, but breached this duty by failing to train its officers regarding the MOU Defendant Metro entered into after Banasik et al. Plaintiff also argues that the additional claims in the FAC are not barred under Nevada's claim-notice statute because Metro was on fair notice of Plaintiff's new claims. Plaintiff also asserts that their amendments to the Original Complaint arise out of the same conduct and transaction or occurrences as the original pleading and therefore relate back under Federal Rule of Civil Procedure 15(c)(1).

Plaintiff further argues that the individual Defendant Officers are not entitled to discretionary immunity for the Nevada false arrest and unreasonable seizure claims because the officers' actions were attributable to bad faith and prohibited by the very law they were purporting to enforce. Plaintiff next concedes that his § 1983 and Nevada unlawful seizure of property claims are barred under the one-year statute of limitations but asserts that these claims as they relate to the seizure of his person are not barred. Finally, Plaintiff argues that his § 1983 and Nevada malicious prosecution claims survive dismissal because Defendants did procure proceedings against him. Plaintiff contends that both his January 7 and January 17, 2021 citations became criminal proceedings when they were assigned case numbers and the January 17, 2021 citation was accompanied by a request for prosecution. Plaintiff also asserts that malice can be inferred from the facts of the FAC.

The Court grants Defendants' Motion to Dismiss in part and denies it in part.

### a. Claim-Notice Statute

NRS 41.036(2), which provides that "[e]ach person who has a claim against any political subdivision of the State arising out of a tort must file the claim within 2 years after the time the

cause of action accrues with the governing body of that political subdivision," requires the plaintiff to provide the government entity with notice of the nature of the claim and to be specific about what is being alleged. Nev. Rev. Stat. § 41.036(2).[2]

The Court finds that NRS 41.036 is not a bar to Plaintiff's state false arrest, malicious prosecution or Nevada free speech (chilling effect and unconstitutionally applied) claims. Plaintiff has complied with the requirements of NRS 41.036(2) because he provided Metro with ample notice of the nature of his claims and his allegations in support of those claims. First, there is no dispute that Plaintiff notified Metro of the claims contained in the Original Complaint on January 2, 2023, when he filed the complaint and again when he attached a copy of the Original Complaint to a presentment letter that was dispatched to Metro on January 3, 2023.

Second, Plaintiff's four additional causes of action do not in any way change the nature of the claims that are being brought against Metro and that are at issue in this case. The four new claims are based on substantially similar and at times, identical, legal theories, and arise out of the same set of facts. For example, Plaintiff's Nevada false arrest cause of action arises from the same exact set of facts that Plaintiff alleges for his § 1983 unreasonable seizure claim—the January 17, 2021 arrest. Further, both claims turn on Plaintiff's ability to show that the officers lacked probable cause. Likewise, Plaintiff's Nevada malicious prosecution claim arises out the same set of facts as his § 1983 malicious prosecution claim, and both causes of action require a showing of the same elements. See Usher v. City of Los Angeles, 828 F.2d 556, 561-62 (9th Cir. 1987) (applying state malicious prosecution elements to federal § 1983 claims). Plaintiff raised two additional free speech causes of action under the Nevada constitution that rely on the same theories as the U.S. Constitution free speech claims raised in the Original Complaint. These causes of action are also directly related to the Nevada free speech claim that Plaintiff had already raised in his Original Complaint. See ECF No. 1 at 19-24 (raising First Amendment free speech (unconstitutionally applied and chilling effect)); ECF No. 1 at 26 (raising violation of Nevada free speech protections

---

[2] Metro is a political subdivision under NRS 41.036(2). Scafidi v. Las Vegas Metro. Police Dep't, 966 F.3d 960 (9th Cir. 2020). Because NRS 41.036(2) only applies to claims brought against political subdivisions of the state, it does not apply any of Plaintiff's claims against the individual defendant officers. Scafidi, 966 F.3d at 965 (9th Cir. 2020) ("the claim statute bars claims against political subdivision[s] of the State only. . . .," but "does not bar [Plaintiff]'s claims against the individual defendants . . . .").

under the Nevada constitution).

Further, all of Plaintiff's claims relate to an ongoing pattern of related events—Metro's repeated interferences with Plaintiff's street performances. Thus, the additional claims fully encompass the same pattern or practice by Metro that Plaintiff previously alleged in the Original Complaint. As Defendant acknowledges, the purpose of NRS 41.036 is to "to prevent the state . . . from being surprised by claims it has not yet had time to consider administratively." State by Welfare Div. of Dept. of Health, Welfare and Rehabilitation v. Cap. Convalescent Ctr., 92 Nev. 147, 151 (1976). To the extent that the purpose of the statute is to give Metro time to consider the claims administratively, Plaintiff's new claims relate to a persistent set of practices by Metro that has and continues to be litigated within the District of Nevada.[3]

The Court also rejects Defendants' attempts to transform the claim-notice statute into a pleading standard, for example, by requiring plaintiffs to give the precise title or source of law for each cause of action in their initial complaint. Neither the plain language of NRS 41.036(2) or case law require this. See Kaminsky v. Woodbury, 85 Nev. 667, 670-71 (1969) ("NRS 41.036 only requires that the notice of claim be timely 'presented' and does not make any specific requirement as to how or by whom the presentation is to be made."). The Court declines to read the claim-notice statute as requiring more than its plain terms suggest. Moreover, such a pleading standard would directly conflict with Rules 8 and 9 of the Federal Rules of Civil procedure, which govern the adequacy of pleadings in federal court. See Hanna v. Plumer, 380 U.S. 460, 470-74 (1965) (holding that where a state law conflicts with an applicable provision of the Federal Rules of Civil Procedure, the federal court must apply Federal Rules).

Because the Court finds that the claim-notice statute only requires plaintiffs to provide notice to the government of the nature of the claim against it and because the four additional causes of action in the FAC do not depart from the original claims either in their legal theory or underlying facts, NRS 41.036 is not a bar to Plaintiff's state false arrest, malicious prosecution or Nevada free speech (chilling effect and unconstitutionally applied) claims. This "conclusion is consistent with

---

[3] The Court notes that it is presiding over present ongoing litigation with respect to this same issue involving street performers and Metro and a series of alleged intentional constitutional violations. See Lechner v. Las Vegas Metro. Police Dep't U.S. Dist. Ct. Case No. 2:19-cv-738-RFB-VCF.

the purpose of the statute, which is to prevent the State, a county, or a city from being surprised by claims it has not had time to consider administratively. As long as the same transaction or occurrence is involved, surprise is minimized." <u>Cap. Convalescent Ctr., Inc.</u>, 92 Nev. at 152.

### a.   Discretionary Immunity - Training, Supervision, and Retention

Under Nevada law, state actors are entitled to discretionary-function immunity if their decision "(1) involve[s] an element of individual judgment or choice and (2) [is] based on considerations of social, economic, or political policy." <u>Martinez v. Maruszczak</u>, 123 Nev. 433, 444-45 (2007); <u>see also</u> NRS 41.032(2). This type of immunity may protect even "frequent or routine decisions" at all levels of government, provided they "require analysis of government policy concerns." <u>Id.</u> at 447. However, there are two important limitations: First, immunity does not apply to actions taken in bad faith. <u>Davis v. City of Las Vegas</u>, 478 F.3d 1048, 1059 (9th Cir. 2007); <u>Falline v. GNLV Corp.</u>, 107 Nev. 1004, 1009 (1991) (finding that acts are committed in bad faith when the actor chooses a course of action "without a reasonable basis or with knowledge or reckless disregard of the lack of a reasonable basis" for the choice). Second, acts that violate the constitution, a legal mandate, or a specific directive cannot be viewed as discretionary. <u>Nurse v. United States</u>, 226 F.3d 996, 1002 (9th Cir. 2000); <u>Berkovitz by Berkovitz v. United States</u>, 486 U.S. 531, 544 (1988) ("When a suit charges an agency with failing to act in accord with a specific mandatory directive, the discretionary function exception does not apply.").

Typically, decisions related to training, supervision, and retention "fall squarely within the discretionary function exception." <u>Nurse</u>, 226 F.3d at 1001; <u>Vickers v. United States</u>, 228 F.3d 944, 950 (9th Cir. 2000) ("This court and others have held that decisions relating to the hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield."). However, the Court must still first consider whether there is a statute, regulation, or other legal authority that would confine Metro's discretion in this case. <u>See</u> <u>Miller v. United States</u>, 992 F.3d 878, 890 (9th Cir. 2021) (describing the <u>Gaubert-Berkovitz</u> test as a two-step process); <u>United States v. Gaubert</u>, 499 U.S. 315, 328-29 (1991) (first assessing whether there was a regulation which mandated particular conduct).

In this case, the complaint alleges two mandatory directives, which limited Defendant

Metro's discretion in training, supervising, and retaining its officers—the MOU that was entered into as a result of a settlement reached in Banasik as well as the specific amendments to Clark County Code. Plaintiff alleges that as part of the Banasik settlement, Metro entered into an MOU with plaintiffs in which the parties agreed that street performing is expressive speech or conduct protected by the First Amendment and that street performing was not a violation of Chapter 16.11 of the Clark County Code of Ordinances. As a result of the MOU, the Clark County Board of County Commissioners amended § 16.11.070 to include the definition of "street performer" and clarify that materials can be placed on public sidewalks. Both the MOU and § 16.11.070 constitute a specific affirmative mandatory directive concerning how officers must address street performers on the public sidewalk, and by extension, the necessary actions such as training, supervision, termination, that Metro must take to ensure the directives are being followed. Therefore, although Metro's decisions in how to train its officers *broadly* involves an element of choice (e.g., number of hours of training, priorities for training, etc.), the decisions that the agency can make related to responding to street performers on public sidewalks are significantly constrained.

The FAC also sufficiently alleges bad faith on the part of Metro. The FAC does not allege a one-off incident and therefore the facts here are unlike other cases where negligent training, supervision, or retention was barred under discretionary immunity. See, e.g., Paulos v. FCH1, LLC, 136 Nev. 18, 25-26 (2020) (finding Metro was entitled to discretionary immunity based on single incident with suspect on hot asphalt); Vickers, 228 F.3d at 949-51 (finding INS was entitled to discretionary immunity with respect to single incident of excessive force). The FAC alleges eight separate incidents involving eleven different officers all acting in similar ways in violation of these directives. The FAC also alleges a litany of past and ongoing litigation involving constitutional violations of street performers that Metro has been a party to—beginning in 1998 and continuing through the litigation of this case. Thus, the FAC raises a plausible inference that Metro has either failed to train or supervise its officers or has affirmatively trained and supervised them in a way that directly contravenes the specific mandates of the MOU and § 16.11.070.[4] The

---

[4] The Court acknowledges that it had questions regarding whether the FAC stated a claim for negligent training, however, upon further review of the record, the Court finds that Plaintiff pleads sufficient facts to raise a negligent training claim based upon these same reasons.

frequency and pattern of events over the course of many years also raises a reasonable inference that Metro is retaining officers despite their repeated violations of these mandates. For the foregoing reasons, the Court finds that Plaintiff's negligent training supervision, and retention claim is not barred by discretionary immunity.

**b.  Discretionary Immunity - False Arrest and Unreasonable Seizure Claims**

The Court next analyzes whether the individual Metro officer defendants are entitled to discretionary immunity with respect to Plaintiff's false arrest and unreasonable seizure claims. Although a police officer's decision to arrest and detain is a discretionary act generally covered by NRS 41.032, Scafidi, 966 F.3d at 965 (citing Carey v. Nev. Gaming Control Bd., 279 F.3d 873, 878 (9th Cir. 2002)), discretionary immunity does not apply to unconstitutional conduct nor does it apply to bad-faith conduct. See Falline, 107 Nev. at 1011. "[Nevada Revised Statute] § 41.032 does not protect a government employee for intentional torts or bad-faith misconduct, as such misconduct, 'by definition, [cannot] be within the actor's discretion.'" Franchise Tax Bd. of California v. Hyatt, 133 Nev. 826, 841-42 (2017) (alteration in original) (quoting Falline, 107 Nev. at 1009).

Acts are committed in bad faith when the actor chooses a course of action without a reasonable basis or "with knowledge or reckless disregard of the lack of a reasonable basis for the choice." Falline, 107 Nev. at 1009. Additionally, "where an officer arrests a citizen in an abusive manner not as the result of the exercise of poor judgment as to the force required to make an arrest, but instead because of hostility toward a suspect . . . or because of a willful or deliberate disregard for the rights of a particular citizen or citizens, the officer's actions are the result of bad faith and he is not immune from suit." Davis, 478 F.3d at 1060; Falline, 107 Nev. at 1009 n.3 ("an act of bad faith has no relationship to a rightful prerogative even if the result is ostensibly within the actor's ambit of authority. For example, if an administrator decides to delay or deny a claimant's benefits because of a personal dislike for the claimant, the delay or denial would be attributable to an unauthorized act of bad faith [even though] a denial or delay could be otherwise among the rightful prerogatives of the administrator.").

The Court finds that Plaintiff has alleged sufficient facts to show that the officer's acts were

14

not discretionary because they contravened a clear ordinance and the constitution, and because the officers acted in bad faith—both of which are independent bases to reject the discretionary immunity defense.

On the night of the arrest, Plaintiff was performing on the bridge between the Bally's and Flamingo hotels. He positioned himself against the edge of the bridge, with the same compact setup he normally employed—his microphone stand and guitar case at his feet, and his speaker placed inside his guitar case. Plaintiff was in full compliance with the express language of § 16.11.070 which reads "this provision shall not apply to . . . items such as musical instrument case or a backpack which is temporarily placed next to a street performer for that street performer's use unless said musical instrument case or backpack actually obstructs the sidewalk." Id. Taking these facts as true, Plaintiff has adequately alleged that the officers arrested him in contravention of the "very law they were purporting to enforce." Because Fleming was in compliance with § 16.11070, Plaintiff has also alleged that the arrest was carried out without probable cause and in violation of the Fourth Amendment. Plaintiff also raises a plausible claim that his arrest violated the First Amendment, particularly when considering § 16.11.070 was revised to prevent future first amendment violations.[5] Plaintiff has raised a plausible inference that the officers acted without a reasonable basis or "with knowledge[6] or reckless disregard of the lack of a reasonable basis for the choice." Falline, 107 Nev. at 1009. For these reasons, the Court finds that the individual Metro officers who arrested Plaintiff are not entitled to discretionary immunity.

### c.  Statute of Limitations for the Unlawful Seizure or Property

The statute of limitations for bringing a 42 U.S.C. § 1983 action is determined by state law. Under Nevada law, the statute of limitations for bringing a claim against a police officer for the unlawful seizure of property is one year. NRS 11.190(5) ("An action against an officer . . . to recover . . . property seized by the officer in his or her official capacity . . . or for damages done to any person or property in making the seizure."). The claim accrued on January 17, 2021, when

---

[5] The Court notes that Defendants do not dispute that Plaintiff has properly pled his First Amendment claims.

[6] Plaintiff has demonstrated the officer's knowledge of § 16.11.070's application to street performers such as himself because Plaintiff explained § 16.11.070 to Officers Lea, Gray, and Charles on January 7, 2021, and to Gray and Charles again on January 15, 2021. ¶ 62, 68.

Plaintiff's property was seized. Plaintiff did not bring these claims until approximately two years after the claim accrued on January 2, 2023. Therefore, Plaintiff's unlawful seizure of property claims are barred under NRS 11.190(5). Plaintiff concedes this as well. However, Plaintiff's unlawful seizure claims as they relate to the seizure of his person are not barred. See Maldanado v. Harris, 370 F.3d 945, 955 (9th Cir. 2004) ("In determining the proper statute of limitations for actions brought under 42 U.S.C. § 1983, we look to the statute of limitations for personal injury actions in the forum state."); NRS § 11.90(4)(e) (setting forth two-year limitations period for personal injury).

### d.  § 1983 and State Law Malicious Prosecution Claims

Plaintiff brings 42 U.S.C. § 1983 and state law malicious prosecution claims against Defendant Metro, Defendant Lea, Defendant Gray, Defendant Charles. Generally, "a claim of malicious prosecution is not cognizable under 42 U.S.C. § 1983 if process is available within the state judicial system to provide a remedy." Usher, 828 F.2d at 561. An exception to this rule exists, however, when a plaintiff shows that the "defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right." Awabdy v. City of Adelanto, 368 F.3d 1062, 1066 (9th Cir. 2004).  "Malicious prosecution actions are not limited to suits against prosecutors but can also be brought, as here, against other persons who have wrongfully caused the charges to be filed." Id.

In § 1983 based malicious prosecution cases, courts apply the state law elements of a malicious prosecution claim. See Usher, 773 F.2d at 562. Thus, to prevail on either a federal or Nevada claim for malicious prosecution under Nevada law, the plaintiff must show that: 1) the defendants lacked probable cause to initiate the prosecution; 2) malice; 3) the prior criminal proceedings were terminated in his favor; and 4) he suffered damages. LaMantia v. Redisi, 118 Nev. 27, 30 (2002). Probable cause "exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." Ramirez v. City of Buena Park, 560 F.3d 1012, 1023 (9th Cir. 2009) (internal quotation marks omitted). Probable cause does not require evidence that is conclusive of guilt, but it does require "a fair probability, given the totality

16

of the evidence," that a suspect has committed a crime. Garcia v. County of Merced, 639 F.3d 1206, 1209 (9th Cir. 2011) (internal quotation marks omitted). Malice may be implied if defendants acted in willful disregard of the plaintiff's rights or inferred by a lack of probable cause. Ewish v. State, 110 Nev. 221, 871 (1994). "A malicious prosecution claim requires that the defendant initiated, procured the institution of, or actively participated in the continuation of a criminal proceeding against the plaintiff." LaMantia, 118 Nev. at 30.

Currently, Plaintiff has not alleged that there was any "prosecution" or criminal process that was initiated. Plaintiff alleges that he was cited on January 7, 2021, which became Case No. 21-CR-00534 and was dismissed on February 22, 2021. Then on January 17, 2021, Plaintiff was arrested and detained in Clark County Detention Center for seven hours and later released. In his opposition, Plaintiff notes this detention was also assigned a case number, Case No. 21-PC-002748. Plaintiff alleges that he was in compliance with § 16.11.070 and was therefore cited and arrested without probable cause. However, in both cases, the state declined to bring formal charges. Plaintiff also was never brought before a magistrate judge. As the Ninth Circuit in Lacey v. Maricopa explained:

> "Although being 'lawfully arrested on a criminal charge' may be considered the institution of a criminal proceeding, Restatement (Second) of Torts § 654(2)(c), where "the arrest is not a valid one, an action for malicious prosecution will not lie unless some further step is taken, such as bringing the accused before a magistrate for determination whether he is to be held," Id. § 654 cmt. e. "If there is nothing more than the false arrest and the accused is released without any further proceeding," the remedy is limited to damages for the false arrest."

> Lacey v. Maricopa Cnty., 693 F.3d 896, 919–20 (9th Cir. 2012).

In Blaxland v. Commonwealth Dir. of Pub. Prosecutions, the Ninth Circuit further illustrated the "universal distinction" between false arrest and malicious prosecution claims, explaining that "the tort of malicious prosecution recognizes the right of an individual to be free from unjustifiable litigation or criminal prosecution where the tort of false imprisonment concerns the violation someone's liberty of movement—imprisoning someone—without the authority of legal process." Blaxland v. Commonwealth Dir. Of Pub. Prosecutions, 323 F.3d 1198, 1204 (9th

Cir. 2003) (internal citation and quotation marks omitted). <u>See also</u> <u>Wallace v. Kato</u>, 549 U.S. 384 389-390 (2007) ("false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process—when, for example, he is bound over by a magistrate or arraigned on charges. . . . Thereafter, unlawful detention forms part of the damages for the 'entirely distinct' tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by *wrongful institution* of legal process.") (emphasis in original). Plaintiff alleges he was subjected to an unlawful arrest, but other than a Case Number, he does not present or allege information about how any criminal proceedings were actually instituted against him.  As such, both malicious prosecution causes of action must be dismissed at this time.

However, at the hearing on the motion, Plaintiff's attorney represented that the process for prosecuting misdemeanor charges is distinct from that of felonies within Clark County—stating that "Metro can automatically initiate court proceedings" and therefore these "cases were initiated." Plaintiff's counsel further explained that many people, including Plaintiff, could have shown up to the court on their own and that "the statement of probable cause is enough for it to start a criminal case." Plaintiff requested leave to amend the FAC to include additional information about the misdemeanor process.  Therefore, the Court will give Plaintiff 45 days to amend the FAC to provide additional facts related to the process for prosecuting misdemeanor cases.

///

///

///

///

///

///

///

///

///

## VI.    CONCLUSION

**IT IS ORDERED** that Defendants' Motion to Dismiss (ECF No. 11) is **GRANTED** in part and **DENIED** in part. Plaintiff's unlawful seizure of property claim is dismissed with prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's 42 U.S.C. § 1983 and Nevada malicious prosecution claims are dismissed without prejudice. Plaintiff shall have until **November 15, 2023** to file an amended complaint adding facts related to Plaintiff's 42 U.S.C. § 1983 and Nevada malicious prosecution claims.

DATED: September 30, 2023

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**